No. 39,983

Condon National Bank of Coffeyville, Coffeyville, Kansas, a Corporation, *Appellee*, v. E. Krigel, *Appellant*.

(294 P. 2d 241)

Opinion filed February 29, 1956.

*Paul Barnett*, of Kansas City, Missouri, argued the cause, and *Aubrey Neale*, of Coffeyville, was with him on the briefs for the appellant.

*Dallas W. Knapp* and *Charles D. Knapp*, both of Coffeyville, argued the cause, and *Frank W. Liebert* and *T. Richard Liebert*, both of Coffeyville, were with them on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This is an appeal from a judgment granting further relief in an action in which a prior declaratory judgment against the defendant had been rendered in district court and affirmed in this court on appeal.

The events leading up to the controversy, the findings of fact and conclusions of law made by the trial court, and the holding of this court on appellate review are all set forth at length in the opinion of *Condon National Bank of Coffeyville v. Krigel*, 176 Kan. 279, 270 P. 2d 232, hereinafter referred to as the original suit, and are hereby made a part of this opinion by reference. However, since

it will facilitate a proper understanding of the present issues, we shall here make a statement in highly summarized form, as briefly as the state of the record permits, of matters pertinent to the original suit.

On October 20, 1952, the plaintiff, Condon National Bank of Coffeyville, filed a petition against the defendant, E. Krigel, for a declaratory judgment in the district court of Montgomery County. Thereafter it filed an amended petition. Without attempting to detail all its averments it may be said this pleading, among other things, alleged in substance that the bank was the owner and in possession of Lots 1 and 2, Eldridge subdivision of Lots 15 and 16, Block 50, in the City of Coffeyville; that defendant was the owner and in possession of Lots 3 and 4 of the same subdivision; that all four of said lots faced the east on Walnut street; that Lots 2 and 3 were contiguous; that there was a stairway located on the east twenty feet of such dividing line between the two lots last mentioned, which stairway was thirty-six inches wide on the inside with an over-all width of fifty-two inches, one-half of which was on Lot 2 and the other half on Lot 3; that on or about June 15, 1952, plaintiff notified defendant that it was about to remove that part of the stairway occupying a part of its Lot 2; that defendant objected to such removal and claimed he might have some use for the stairway at a later time; that defendant advised plaintiff it had no right to remove such stairway without his consent and that he would not consent to its removal; and that defendant had led plaintiff to rely upon his abandonment of the use of the stairway by failing to use it during the preceding twelve years.

The prayer of the amended petition was that the court determine and adjudicate the rights of the parties in and to the portion of plaintiff's Lot 2 upon which the stairway rested, and to adjudge that plaintiff had the right to remove all that part of the stairway occupying Lot 2 and for such other relief as to the court might seem just.

In response to the amended petition defendant filed an amended answer and cross petition. In the answer he denied all allegations to the effect he had no right of easement in the stairway and then after alleging the facts on which he based his right to that relief, which we pause to note included allegations in substance to the effect that he and his predecessors in title had continuously used and occupied such stairway for the last 68 years under claim of right and title, he prayed for a judgment declaring him to be the

owner of an undivided one-half interest in such stairway with unrestricted right to its free use, including the portion thereof located on Lot 2. Purely for informative purposes it may be stated no reference to the allegations of the cross petition is here required because a demurrer thereto was sustained in the original suit.

The original suit was tried by the court which made and entered extended findings of fact and conclusions of law and rendered judgment declaring that defendant had no easement by grant, but only an implied license to use part of Lot 2 for a stairway, which license was revoked by plaintiff in June, 1952; and that defendant had no right, title or interest in and to that part of plaintiff's lot upon and over which rested such stairway. This judgment, as has been heretofore noted, was affirmed by this court on May 8, 1954, (176 Kan. 279) and it may be here stated that the findings of fact and conclusions of law as set forth in the opinion of such decision are not only the established facts and law of that case but must be regarded, so far as they are pertinent to its decision, as the established facts and law of this supplemental proceeding. Because they can be found in the opinion of the case last cited we are not inclined to burden this opinion by detailing all of such findings of fact and conclusions of law. However, we pause here to note that one of its findings, identified therein as XXXI, reads:

"If the plaintiff is deprived of the use of all its Lot Two its new building will have to be altered in design, will have less floor space, will be architecturally imperfect, and be of substantially less value because of said north stairway. The front of building will be marred in appearance by the unsightly, old, worn out stairway adjoining it."

Following affirmance of the judgment above mentioned plaintiff, as it had a right to do (See, G. S. 1949, 60-3129), filed an application by petition in the same cause for further relief in which, among other things, it was alleged that after the commencement of the action and in January 1953, defendant continued to wrongfully and unlawfully hold possession of the strip of land owned by plaintiff over which the stairway rested, refused to surrender its possession, and repeatedly warned plaintiff that he would stop it from removing such stairway; that plaintiff was forced to continue erection of its bank building or suffer damages by reason of delayed construction in excess of the sum of $45,000; that in January 1953, by reason of such action, plaintiff was forced to alter the designs, plans and specifications of the building it was then constructing on

Lots 1 and 2 to build around the stairway and strip of ground occupied by defendant so as not to invade the rights he was asserting therein; that the additional cost to plaintiff of its new building by reason of this action was $4,666; that if the stairway had been eliminated in conformity with plaintiff's original plans the wall of the new building would have eliminated the stairway on plaintiff's property without additional expense; that the cost of eliminating such stairway and closing the space in question would be $13,460; for all of which damage plaintiff claimed judgment and asked for a mandatory injunction compelling defendant to either remove the stairway or, failing in this, enjoining him from molesting or interfering in anyway with plaintiff's removal thereof and the closing of the area thereunder on its land.

When defendant's demurrer to the foregoing petition, based on the ground it failed to state facts sufficient to constitute a cause of action, was overruled he filed an answer wherein he denied that he had at any time wrongfully or otherwise held possession of the strip of land owned by plaintiff, denied that he ever threatened to use any physical force to stop plaintiff, and asserted that he resisted plaintiff's claim to the right to remove the stairway only by defending the original suit. Such answer also denied plaintiff was forced to continue its erection of its building; denied that it would have been damaged if it had delayed construction thereof and alleged that plaintiff voluntarily began erection of its building with the full knowledge that the question as to whether defendant had an easement over the stairway was in doubt.

Plaintiff's reply to the foregoing answer was a general denial. Thereafter, defendant filed a supplemental answer wherein he alleged that since the issues were joined he had removed the entire stairway with plaintiff's consent. This was admitted by plaintiff's subsequent reply, wherein it conceded that because of such action the total damages it claimed to have sustained respecting the stairway had been reduced to $8,910.17 and that it no longer required injunctive relief.

With issues joined as heretofore related this cause came on for trial by jury. Plaintiff's opening statement followed. In such statement his counsel advised the jury that certain facts and conclusions of law had already been established by the original suit and that the parties would proceed from that point on in such action. Among other things, he went on to say, in substance, the evidence would

disclose that in March, 1952, plaintiff entered into an agreement for the construction of a new bank building; that the plans and specifications therefor contemplated a building to cover all the bank's property, including the area on Lot 2 occupied by half of the stairway; that plaintiff notified defendant it was going to build there and that his license to use the portion of Lot 2, theretofore used as a stairway, was revoked; that defendant refused to recognize such revocation and claimed both he and his tenants had rights to access and possession therein; that the bank being convinced that the defendant would not surrender or recede from his position brought this action asking the court to determine whether or not plaintiff had the right to the exclusive possession of its property; that the original action established the fact that Krigel had no interest in such property and that he improperly claimed a continuous right to the use of the stairway; that while such action was in process of determination, plaintiff's construction was going on and the time came when it either had to abandon the property at a substantial loss or revise the plan to go around the stairway; that on this account plaintiff redesigned the plan and built around such stairway, resulting in an extra cost of $4,656; that after that was done, and since the judgment in the original suit, the defendant removed the stairway and built the front of his building across the opening thereof to the property line, thus making it necessary to close the hole, which would cost plaintiff the sum of $4,244.17; and that plaintiff claimed damages in these two amounts for the total sum of $8,902.07.

At the close of the opening statement defendant moved for judgment in his favor on such statement on the ground it disclosed no facts to be proven sufficient to constitute a cause of action. This motion was overruled. Thereupon the trial court read the findings of fact and conclusions of law made and filed by it in the first trial to the jury and properly stated that they were to be regarded as final, irrevocable and determined factors in reaching its verdict in the supplemental proceeding.

After making its opening statement plaintiff adduced its evidence which need not be detailed. It suffices to say that upon careful examination and analysis such evidence not only supports but was sufficient to establish all claims made by plaintiff in the opening statement respecting its import. Therefore without further reference, since the record discloses the defendant offered no evidence

during the trial that can be regarded as refuting plaintiff's evidence, findings of fact in the original suit and the statements made by plaintiff in its opening statement, to which we have heretofore referred, may hereafter be regarded as the established facts of this case.

With the record in the condition last above indicated defendant demurred to plaintiff's evidence for the reason it failed to prove a cause of action under any theory of law; failed to show any violation of plaintiff's rights; failed to prove any damage provable under any theory propounded; and failed to prove any damage that was the direct result of any wrongful act on his part. Upon the overruling of this demurrer he announced he had no evidence to offer. Thereupon the court instructed the jury as to the law of the case. The cause was then submitted to the jury which, in due time, returned a general verdict for plaintiff along with its answers to four special questions, also one question on which it was unable to reach agreement. The defendant then filed a motion to set aside the answers to such special questions, based on grounds they were contrary to the evidence and not supported by any evidence; a motion for judgment *non obstante* charging that such special findings were inconsistent with the general verdict and showed as a matter of law facts which entitled him to judgment; and a motion for a new trial, presenting all questions urged by defendant as grounds for reversal of the judgment. Ultimately these three motions were overruled and thereupon the trial court approved the general verdict, found that judgment should be entered thereon and rendered judgment in accord therewith. Subsequently defendant perfected his appeal to this court where his specifications of error permit appellate review of all questions hereinafter considered, discussed and determined.

Preliminary to consideration on the merits the appellate issues will be simplified by brief reference to certain matters which, due to the nature of the action and the state of the record, must be regarded as established and not in dispute.

Assuming arguendo that appellant's conduct with respect to the stairway in question was sufficient on which to base a cause of action for damages, there can be doubt that, under our declaratory judgment statute (G. S. 1949, 60-3127 to 60-3132[c], incl.) and decisions construing its force and effect (See, e. g., *Phoenix Indemnity Co. v. Zinn*, 177 Kan. 689, 694, 281 P. 2d 1065) appellee had

the right to maintain such action and recover relief as therein sought in a proceeding for further relief in the original suit.

Nor can there be any question, as we have heretofore indicated, regarding the force and effect to be given the findings of fact and conclusions of law in such case. So far as here pertinent they are to be considered as final, irrevocable and determined factors in reaching a decision as to the right of the parties in the present proceeding.

With further respect to the original suit we think the findings of fact and conclusions of law must be regarded as establishing the exclusive right of the bank to all of Lot 2 including the portion of the stairway located thereon; its right to remove such stairway; and the fact that if appellee were deprived of such rights, and the use of all of such lot, it would sustain damages by reason thereof. We go further and say that inherent in such findings and conclusions was an adjudication that all claims made by appellant to use any portion of appellee's Lot 2 were unwarranted and wrongful under the existing facts and circumstances.

Moreover, it cannot be denied that appellant, as late as May 8, 1954, and long after his action had caused appellee to revise its building plans and build around the stairway, was claiming, by and through pleadings filed in the original suit, he was the owner and had been in the open and continuous possession of an undivided one-half interest in such stairway with the unrestricted right to its free use, including the portion thereof located on Lot 2.

Under the evidence, which we pause here to re-emphasize was substantially in conformity with claims made by appellee's counsel in the opening statement, the uncontroverted facts are that, until April 1, 1955, when he removed the entire stairway with the consent of appellee, appellant at all times claimed the right to use, and asserted rights of possession in, the full stairway, including the portion located on Lot 2, and took the position that if appellee tried to remove or partially remove such stairway he would stop any attempt to do so by legal action; that as a result of the claims thus made with respect to the stairway appellee, rather than invade the rights so asserted by appellant and in order to avoid more substantial loss under its construction contract, revised its original building plans and constructed its new building around the stairway without using that portion of Lot 2 on which that structure was located; that the increased cost and loss sustained by appellee in

building around such stairway was $4,600; and that now, since appellant had removed the stairway, the cost of closing up the space it had theretofore occupied on appellee's property would amount to $4,300.

In view of what has been heretofore related we have become convinced there are actually but two important questions to be decided in this case. The first is whether the evidence established a cause of action in favor of appellee and against appellant. The second, if the first is decided contrary to appellant's position, has to do with the amount of damages recoverable under the confronting facts and circumstances.

In the first contention advanced by appellant as a ground for reversal of the judgment he directs attention to the fact that the petition for further relief asserts that "the defendant continued to wrongfully and unlawfully hold possession of the strip of land owned by plaintiff over which the stairway rests, and refused to surrender possession to plaintiff," and then charges the record discloses no evidence that he held possession of appellee's land or withheld possession thereof. We have no difficulty in concluding that in the face of the entire record this contention lacks merit and cannot be upheld. In the first place, even if it be assumed there was no concrete evidence of actual physical possession, the record, as we have heretofore indicated, discloses that throughout the entire period of time herein involved appellant's claims with respect to that situation were based on pleadings which, in clear and unequivocal terms, asserted that he was the owner and had been in the open and continuous possession of an undivided one-half interest in such stairway with the unrestricted right to its free use and occupancy. Under such circumstances we believe he is estopped from taking a position diametrically opposed to that assumed by him in the original suit and cannot now be heard to say the evidence in the court below failed to establish he was exercising dominion over such property. In the next we are not required to labor whether he was in the actual physical possession thereof. The undisputed evidence is that he claimed a right to its possession and by his action and conduct not only effectively but successfully kept appellee, who was the real owner of such property, out of its possession. In that situation we believe it must be held that, for all purposes pertinent to the disposition of this lawsuit, appellee's evidence must be regarded as sufficient to support the heretofore quoted allegations of his petition.

By other contentions, based in the main upon his erroneous concept of what the evidence discloses respecting his possession and his withholding of possession of the property in question, appellant presents technical arguments regarding the form of the remedy and insists that appellee was not entitled to go to the jury on the question of damages sustained by it on any theory known to the law.

We are not called upon, particularly in view of our statute (G. S. 1949, 60-201) providing the distinction between actions at law and suits in equity and the forms of all such actions and suits previously existing are abolished, to here delve into intricacies of the age old arguments advanced respecting the distinctive characteristics existing between common law and modern actions.

It suffices to say that long ago the legislature of this state abolished all distinctions in the form of such actions and our decisions dealing with that subject leave no doubt as to the power of courts in disposing of them.

In *Minch v. Winters*, 122 Kan. 533, 253 Pac. 578, we said:

"It should not be forgotten that in the simplification of our civil code and the statutory abolition of distinctions between actions at law and suits in equity (R. S. 60-201), the legislature was not engaged in curtailing the essential powers of our courts of general jurisdiction. The legislative purpose was rather to emancipate the courts from those ancient artificialities of procedure which handicapped them in dealing out whatever measure of redress, legal or equitable, justice in any case required. (*Houston v. Goemann*, 99 Kan. 438, 162 Pac. 271, and citations; *Kolbourn v. Sunderland*, 130 U. S. 505; and Rose's notes thereto in 32 L. Ed. appendix.)" (p. 539.)

Similar expressions are to be found in *Drainage District v. Railway Co.*, 99 Kan. 188, 209, 161 Pac. 937; *Farney v. Hauser*, 109 Kan. 75, 198 Pac. 178; *Shawnee County Comm'rs v. Wright*, 153 Kan. 19, 109 P. 2d 184; and *Kelso v. Norton*, 65 Kan. 778, 787, 70 Pac. 896.

The rule in this jurisdiction, as heretofore stated, presents nothing new or startling. It has been continuously followed and adhered to by this court throughout its history. See, *e. g.*, the early case of *A. T. & S. F. Rld. Co. v. Rice*, 36 Kan. 593, 14 Pac. 229, where, in discussing the distinctions existing at common law between different actions, it is said:

". . . These distinctions, however, have but little value in this state; for in this state all the old forms of action are abolished, and in their place only one form of action is given, called 'a civil action,' (Civil Code, § 10,) and in this form of action redress for all 'injuries suffered in person, reputation, or property,' (Const., Bill of Rights, § 18,) may be had. . . ." (p. 599.)

In the face of the entire record and in view of the foregoing decisions we have no trouble in concluding that all of appellant's contentions to the effect appellee had failed to establish a cause of action against him and therefore was not entitled to go to the jury under any theory known to the law cannot be upheld.

On the basis of what has been heretofore held and stated the only remaining questions in this case requiring decision have to do with the amount of damages appellee was entitled to recover under the existing facts and circumstances. The undisputed evidence of record is that appellee, instead of invading the rights asserted by appellant and forcibly taking possession of all of its property or postponing the completion of its building until the completion of the lawsuit, as it had the right to do, voluntarily elected to complete such building by building around the involved stairway at an additional cost of $4,600, thus sustaining damages in that amount. While we believe it had that right we think that by exercising it appellee fixed and limited its damages to the additional cost incurred by building around the stairway. The inescapable result is that the sum of $7,000, allowed by the jury as damages in its verdict is excessive in the sum of $2,400. This excess, we pause here to point out, resulted from and was based on evidence improperly admitted, over appellant's objection, respecting the amount appellee would be required to expend by extending the building it had already constructed to cover the space left by the stairway after its removal and on an instruction given by the trial court, also objected to by appellant, that the jury could award as damages "the reasonable additional expense, if any, proximately caused by wrongful conduct of the defendant, to which the plaintiff has been put and will be put in the completion of its building."

Conceding, the record discloses the trial court erred in admitting the evidence and in giving the instruction above mentioned it does not follow that a new trial should be granted in this case because of such errors. An examination of the entire record discloses beyond all reasonable doubt that, on the basis of what is here said and held, if a new trial were to be granted it could only result in the rendition of judgment in favor of appellee for the sum of $4,600. Under such circumstances it cannot be said that such error has prejudicially affected the substantial rights of either of the parties. Moreover, we are convinced that this lawsuit should be brought to an end. Therefore, under the authority conferred on this court by G. S.

1949, 60-3317, as well as G. S. 1949, 60-3330, we hold that the judgment of $7,000 rendered by the district court should be modified by reducing it to $4,600 and that the cause should be sent back to such court with directions to render judgment in favor of appellee (plaintiff) and against appellant (defendant) for that sum, together with all costs of the action.

It is so ordered.

HARVEY, C. J., not participating.